IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 15, 2005 Session

## STEVEN A. EDWARDS, ET AL. v. NANCY ALLEN, ET AL.

**Appeal from the Chancery Court for Rutherford County**
**No. 03-6806CV     Robert E. Corlew, III, Chancellor**

_____

**No. M2004-01944-COA-R3-CV - Filed November 28, 2005**

_____

Plaintiffs appeal the action of the trial court in granting Defendants' Tennessee Rule of Civil Procedure 12.02(6) Motions to Dismiss their challenge to a November 9, 1992, amendment to the Rutherford County Zoning Resolution. The trial court determined that the 10-year statute of limitations provided by Tennessee Code Annotated section 28-3-110 barred the action and that the discovery rule did not apply. We hold that on the record before the Court, the November 9, 1992, purported amendment is void *ab initio*. The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Frank M. Fly, Kerry Knox, Murfreesboro, Tennessee, for the appellants, Steven A. Edwards, Sally Edwards, Fran Lovell, Tonia Nadeau, and Joanne M. Batey.

D. Randall Mantooth, Mark W. Honeycutt, II, Nashville, Tennessee, for the appellee, Nancy Allen, Rutherford County Executive.

John I. Harris, III, Nashville, Tennessee, for the appellee, Alan Loveless.

G. Sumner R. Bouldin, Jr., Murfreesboro, Tennessee, for the appellees, Tommy G. Jackson and Susanne Jackson.

## OPINION

Defendants Tommy G. Jackson and wife Susanne Jackson were owners of a 108.1-acre tract of land located at 8890 Big Springs Road, Rutherford County, Tennessee. Prior to November of 1992, this land was zoned "residential 20" under the Rutherford County Zoning Resolution. On October 2, 1992, Mr. Jackson submitted a Rutherford County Land Use Application Form to the

Rutherford County Regional Planning Commission requesting that he be allowed to use 10 acres of his 108.1-acre tract for "at present one skeet field and one trap field, in future possibly more skeet fields and trap fields." The Planning Commission on October 10, 1992, published a Notice of Public Hearing in the *Daily News Journal*, a newspaper of general circulation in Rutherford County. This Notice asserted that the County Commission would hold a public hearing on Monday, November 9, 1992, at 7:30 p.m. in the Circuit Court Room of the Rutherford County Courthouse to obtain public comment on pending matters which included:

> 3) a request submitted by Tommy Jackson to reclassify a ten acre parcel from R-20 to Service 7997 to allow a skeet and trap field. The parcel is located on Big Springs Road as referenced by Tax Map 173, Parcel No. 16.02, as recorded in deed book 243, page 170 in the Rutherford County Register of Deed's office.
> Joe Black Hayes, Chairman RUTHERFORD COUNTY REGIONAL PLANNING COMMISSION.
> To be run: October 10, 1992.

The Rutherford County Planning Commission held its regular meeting on October 19, 1992, and the minutes of that meeting provide:

VI. C. TOMMY JACKSON   A-286

Location: Big Springs Road, Tax Map 173, Parcel Number 16.02. Mr. Jackson requested reclassification of a 10 acre parcel from Residential 20 to Service 7997 to allow skeet and trap fields.

Mr. Jackson stated that the skeet and trap fields will be a private club. He said that their (sic) will be no alcoholic beverages on the property. He stated that up to five members would be shooting at one time and the rest would wait at the clubhouse. The operating hours would be from 10 a.m. to 7 p.m. on Monday through Saturday and from 12:30 p.m. to 7 p.m. on Sundays. They plan to have no lighting.

Chairman Hayes opened the floor to public hearing. Mary Hawthorn stated that she live[s] on adjoining property and is concerned with the gun shots spooking their ponies. Bill Gum stated that he owns adjoining property with cattle on his property and is opposed to the request due to the potential of cattle being shot. Grady Jones stated noise from a four-wheeler or chainsaw would be greater than the shotguns fired on the property. Ed Barrett stated that a shot gun is much safer than a riffle (sic) and would not carry 300 yards. Douglas Hawthorn expressed concern of noise and number of people on the property.

Following further discussion, Mr. Phillips made a motion, seconded by Dr. Fullerton to approve Mr. Jackson's request with no lighting or alcoholic beverages allowed,

and on shooting after 7 p.m.  The motion carried unanimously be (sic) roll call vote (11 for).

The agenda of the Rutherford County Commission meeting for November 9, 1992, contained an entry disclosing:

10)       PLANNING AND ZONING COMMISSION

Norris Colvert, Director

a)  RE:   PUBLIC HEARING  - TOMMY JACKSON REZONING REQUEST
       MEMO TO:   Board of Commissioners
       FROM:          Planning Department
       DATE:          November 9, 1992

       Furnished for your information and study are copies of documents scheduled to appear on the Board of Commissioners agenda November 9, 1992

       TOMMY JACKSON            A-286
       LOCATION: Big Springs Road     TAX MAP: 173   PARCEL: 16.02
       COMMISSIONER: Bob Woods        SIZE OF SITE: 10 acres
       EXISTING ZONING: Residential 20
       EXISTING USE: Vacant
       ZONING REQUEST: Service 7997 (skeet and trap fields)
       PLANNING COMMISSION: October 19, 1992 – Recommends approval with conditions being no lighting, alcoholic beverages, or shooting after 7 p.m.  The motion carried unanimously by roll call vote (11 for).

The record contains no evidence of the actual proceedings before the Rutherford County Commission on November 9, 1992, other than the official minutes of such meeting which contain the following:

A RESOLUTION TO AMEND
THE RUTHERFORD COUNTY ZONING MAP,
ADOPTED APRIL 9, 1962

WHEREAS, the Rutherford County Regional Planning Commission in regular session October 19, 1992 completed a detailed analysis of property referenced by Zoning Map No. 173, Parcel No. 16.02, located in the 24th Civil District on Big Springs Road; and

WHEREAS, due notice was published and a hearing held in accordance with Tennessee Code Annotated 13-7-105 and Article IV of the Rutherford County Zoning Resolution; and

WHEREAS, it had been determined that the proposed reclassification of the above referenced property will not adversely affect the health, safety, or general welfare of the citizens of Rutherford County; and

WHEREAS, the Rutherford County Regional Planning Commission recommends that the subject property be reclassified from Residential 20 to Service 7997 to allow a skeet field by a vote of 11 for.

NOW THEREFORE BE IT RESOLVED by the Rutherford County Board of Commissioners that:

The Zoning Map of Rutherford County be amended by reclassifying from Residential 20 to Service 7997 as referenced by Tax Map 173, Parcel Number 16.02, and starting from a pin in Beginning at a pin in Big Springs Road S 1° 34' 40" E 795.8' to a pin S 15° 13' 20" W 342.8' to a pin by a 18" Hickory S 23° 4' 31" W 321.4' to a pin S 6° 15' W 537.2' to a pin S 84° 7' E 1071.4' to a pin S 82° 49' E 126.15' to a pin N 11° 40' 72" W 2139.72' to a pin N 87° 7' W 207.45' to a pin N 86° 5' W 849.9' to a pin which is the beginning N 86° 43' W 845.65' containing 90 acres more or less and hereby established upon Zoning Map 173 on file as reclassification request A-286 at the Rutherford County Planning Department.  The reclassification is approved with the following conditions: no artificial lighting, alcoholic beverages, or shooting after 7 p.m.

November 9, 1992

--------------------------------------------------------------------

Chairman John B. Mankin recessed the Rutherford County Board of Commission Meeting to hold a Public Hearing on the Tommy Jackson rezoning request.

Chairman John B. Mankin requested that all those desiring to speak for or against the issue to please stand, state their name and give a brief statement as to whether they are for or against the issue and why.

Tommy Jackson spoke for his request briefly.  Ed Barrett also spoke in favor or (sic) the request.

No one spoke against the issue.

Chairman John B. Mankin closed the Public Hearing and called the Rutherford County Board of Commission Meeting back in session.[1]

Thus, we see that everything from the original Application to Rezone through the Notice of Public Hearing through the proceedings before the Planning Commission of October 19, 1992, and up until the Final Resolution of the Rutherford County Commission of November 9, 1992, concerns only a 10-acre tract. The first time there is any mention of a 90-acre tract is in the actual rezoning resolution adopted by the Rutherford County Commission following the public hearing on November 9, 1992.

From November 9, 1992, until some time in 1999, all went well among the neighbors as Mr. Jackson limited his skeet range operation to the 10 acres of property for which he originally requested the zoning reclassification. Some time in 1999 Mr. Jackson allowed the defendant Alan Loveless d/b/a Big Springs Clay Target Sports to begin operation on the property, and he expanded the shooting range to cover approximately 60 acres of the Jackson tract.

On June 13, 2003, the present action was filed seeking declaratory judgment that the Rutherford County Commission's November 9, 1992, Resolution:

> (1) Violates the express terms of the Rutherford County Zoning Resolution and is therefore unlawful, invalid and of no effect whatsoever;
>
> (2) Constitutes "illegal spot zoning" because it was clearly arbitrary and capricious, having no relation to the public health, safety and welfare of the citizens of Rutherford County and because it arbitrarily favored individual landowners to the detriment of the surrounding landowners, and is therefore unlawful, invalid and of no effect whatsoever;
>
> (3) Violated Tennessee Code Annotated § 13-7-105 because the Rutherford County Commission provided a description of the property to be rezoned in its notice of hearing that was substantially, materially and misleadingly different from the description of the property actually rezoned in the November 9, 1992 Resolution so as to render the Resolution unlawful, invalid and of no effect whatsoever;

---

[1]The Rutherford County Commission meeting minutes of November 9, 1992, as they appear in the record in this case do not disclose what action was taken on the resolution, and we are left to assume from all circumstances that the resolution must have received an affirmative vote of the Commission.

-5-

(4) Violated Plaintiffs' procedural due process rights under the 5th and 14th Amendments of the Constitution of the United States because the Rutherford County Commission provided a description of the property to be rezoned in its notice of hearing that was substantially, materially and misleadingly different from the description of the property actually rezoned in the November 9, 1992 Resolution so as to render the notice misleading and defective, and thus unlawful, invalid and of no effect whatsoever; and

(5) Violated Plaintiffs' procedural due process rights under Article I, Section 8 of the Constitution of the State of Tennessee because the Rutherford County Commission provided a description of the property to be rezoned in its notice of hearing that was substantially, materially and misleadingly different from the description of the property actually rezoned in the November 9, 1992 Resolution so as to render the notice misleading and defective, and thus unlawful, invalid and of no effect whatsoever.

Each defendant filed a Tennessee Rule of Civil Procedure 12.02 Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted. These Motions asserted that the Complaint showed on its face that the 60-day statute of limitations provided by Tennessee Code Annotated section 27-9-102 together with the 1-year statute of limitations provided by Tennessee Code Annotated section 28-3-104 and the 10-year statute of limitations provided by Tennessee Code Annotated section 28-3-110 had all expired before suit was filed.

The trial court determined that the 10-year statute of limitations provided by Tennessee Code Annotated section 28-3-110 barred the cause of action and that the discovery rule did not apply.

Plaintiffs filed a timely appeal.

A procedural problem must be resolved at the outset. The case is before this Court on appeal from the grant of the trial court of Tennessee Rule of Civil Procedure 12.02(6) Motions to Dismiss. These Motions are based entirely on the alleged expiration of the statute of limitations with the trial court applying a 10-year statute. The parties and the trial court have addressed the statute of limitations question without first resolving the validity of the November 9, 1992, Amendment to the Zoning Resolution. The question of a statute of limitations cannot be resolved without first addressing the validity of the ordinance as these issues are inextricably interwoven. If the amendment to the ordinance is void *ab initio*, there is no applicable statute of limitations. So it is that before this Court can resolve the statute of limitations issues raised by the Tennessee Rule of Civil Procedure 12.02(6) Motions, it must first determine the validity of the November 9, 1992, Resolution on the record that is before the Court. The determination that follows is within the context of a Tennessee Rule of Civil Procedure 12.02(6) Motion and without prejudice to the rights of any party to further develop the record after remand.

Based on the record that is before this Court, the resolution of November 9, 1992, is void *ab initio*.

Tennessee Code Annotated section 13-7-105 provides in pertinent part:

**13-7-105. Amendments of zoning ordinance provisions — Procedure. —** (a) The county legislative body may, from time to time, amend the number, shape, boundary, area or any regulation of or within any district or districts or any other provision of any zoning ordinance; but any such amendment shall not be made or become effective unless the same be first submitted for approval, disapproval or suggestions to the regional planning commission of the region in which the territory covered by the ordinance is located, and, if such regional planning commission disapproves within thirty (30) days after such submission, such amendment shall require the favorable vote of a majority of the entire membership of the county legislative body.

(b)(1) Except as provided in subdivision (b)(2), before finally adopting any such amendment, the county legislative body shall hold a public hearing thereon, at least fifteen (15) days' notice of the time and place of which shall be given by at least one (1) publication in a newspaper of general circulation in the county. A complete summary of such amendment shall be published at least once in the official newspaper of the county or in a newspaper of general circulation in the county. The summary shall include a statement that a complete copy of the amendment is available and where such copy may be obtained. If the zoning ordinance rezones property, a description of the property that is rezoned shall be included in the summary.

Tenn.Code Ann. § 13-7-105(a) and (b)(1).

No amendment to the zoning ordinance purporting to rezone 90 acres of the Jackson property was ever submitted to the Rutherford County Regional Planning Commission, and no recommendation of such rezoning was ever made by the Rutherford County Planning Commission. The only recommendation from the Planning Commission prior to the November 9, 1992, Resolution of the Rutherford County Commission was a recommendation following the October 19, 1992, meeting of the Planning Commission which recommended the rezoning of the 10 acres requested by Jackson. The Notice of Public Hearing published in the *Daily News Journal* on October 10, 1992, gave notice of a public hearing scheduled November 9, 1992, on Jackson's application to reclassify a 10-acre parcel of land. Following the public hearing of November 9, 1992, the Rutherford County Commission purported by resolution to rezone, not the 10 acres that was the subject of the public hearing, but a 90-acre tract described by metes and bounds.

Such a zoning resolution is void *ab initio* under essentially undisputed authority.

The Supreme Court of Rhode Island addressed such a case in *DeLucia v. Town of Jamestown*, 265 A.2d 636 (R.I.1970). Notice of a public hearing relative to a proposed zoning amendment had been properly published which provided among other things that Plaintiff's residential district would require a minimum lot size of 40,000 square feet. The public hearing was timely held at which property owners affected expressed their objections and their approval or disapproval of the amendment. More than 30 days after the public hearing the town council adopted the amendment to the zoning ordinance, but the amendment as adopted differed significantly from the amendment that was disclosed in the Notice of Hearing and in the public hearing. The amendment, as adopted, required among other things in the Plaintiff's district a minimum lot size of 80,000 square feet. In holding the amendment to the zoning ordinance to be void as beyond the jurisdiction of the town council, the Supreme Court of Rhode Island stated:

> Consequently, if as a result of the hearing held pursuant to such notice, the local legislature determines that the amendment as proposed should be substantially altered, acquisition of jurisdiction to adopt a substantially altered amendment requires that public notice thereof be given and a public hearing held thereon.

> Clearly, the purpose of holding a public hearing and giving notice thereof is designed to bring possibly desirable changes to the attention of the town council before enactment. If, notwithstanding objections to the map and ordinance as proposed or suggestions of substantial alterations thereto made at the hearing, the local legislative body finds the map and ordinance as proposed conform to a comprehensive plan, its adoption of them is a valid exercise of its delegated police power. Interested persons having notice of what the local legislature purports to do might well fail to attend the public hearing, being satisfied with that which is proposed.

> On the other hand, if the local legislature is free to make substantial alterations in either the proposed map or ordinance without again giving notice and conducting a public hearing, the holding of such hearing becomes meaningless. Having heretofore held in *Rhode Island Home Builders, Inc., supra,* that such public notice and hearing are conditions precedent to the local legislature's jurisdiction to take final action, we conclude that the alterations to the proposed map and ordinance in the instant case, if substantial, were made in excess of the Jamestown Town council's jurisdiction.

> . . .

> It is our holding, therefore, that the action of the Jamestown Town Council on January 9, 1967, purporting to adopt amendments to the map and ordinance proposed for consideration at the public hearing of December 5, 1966, was ultra vires of the town council's jurisdiction. Judgment affirmed.

*DeLucia*, 265 A.2d at 639-40.

Addressing the same question as to deviation between the notice of public hearing and the zoning amendment ultimately adopted, the United States Court of Appeals for the District of Columbia, reversing the trial court, held such variation fatal to the validity of a zoning amendment. The facts before the court involved a proposed zoning change with a required public hearing thereon set for May 27, 1957, after proper advertisement. The notice provided that interested persons could examine the proposed amendment and the zoning maps made a part thereof by visiting the Office of the Zoning Commission. The plaintiffs in the case visited this office, and on review of the proposed amendment and the maps determined that the area in question was to be classified under the proposed amendment as in R-1-B category which would permit only detached single family dwellings on lots 50 feet wide and containing at least 5,000 square feet. Further requirements were that the dwelling occupy no more than 40 percent of the lot area and have two side yards at least 8 feet in width. At the public hearing Plaintiffs appeared and expressed general support for the proposed zoning plan. Almost a year later, without further public hearing, the zoning commission passed the zoning amendment, but the area involving Plaintiffs' property was downgraded from R-1-B classification to an R-3 classification. This category would permit the erection of row houses occupying 60 percent of the lot area on lots 20 feet wide containing at least 2,000 square feet. No notice of this change from the proposed amendment was given, and no public hearing on the change was held prior to its adoption. Reversing the trial court, the District of Columbia Court of Appeals held:

> We think it unquestionable that the notice and public hearing required by Section 5-415 of the Code were not given with respect to the R-3 zoning adopted for the area in question. The notice, by means of the map incorporated therein, made a specific proposal to classify the area as R-1-B for zoning purposes. Thus in terms it gave notice of that proposal only. To be sure, there was a general admonition in the notice that the zoning of all lots and parcels in the District would be affected and changed. But the proposal for R-1-B zoning in the notice did represent a change in zoning in the area. The general notice of change can hardly be construed as notice to the public that the zoning of the particular area involved would be changed in any other way than that specifically proposed.
>
> The statute states that *before* an amendment is put into effect, a public hearing shall be held *thereon*. That was not done with respect to the amendment adopted for the area involved. The only hearing held related to the proposed amendment which was finally rejected by the Zoning Commission. Before another proposal could be adopted, a notice and hearing relating to it were required under the plain terms of the statute. *Cf. McClatchy Broadcasting Co. v. Federal Communications Commission*, 1956, 99 U.S.App.D.C. 199, 239 F.2d 19, certiorari denied, *Sacramento Telecasters, Inc., v. McClatchy Broadcasting Co.*, 1957, 353 U.S. 918, 77 S.Ct. 662, 1 L.Ed.2d 665.

The hearing on the rejected amendment cannot be treated as an acceptable substitute for the required hearing, since the amendment purportedly put into effect on May 12, 1958, represented a major and substantial change from the proposed amendment. It lowered the zoning standard for the area, whereas the proposal had been for a somewhat higher standard than that then existing. The proposal was so fundamentally changed that a public hearing was required before an amendment embodying the change could validly be adopted. This is the uniform holding under comparable statutes. *See, e.g.*, *Fish v. Town of Canton*, 1948, 322 Mass. 219, 77 N.E.2d 231; *Village of Sands Point v. Sands Point Country Day School*, 1955, 2 Misc.2d 885, 148 N.Y.S.2d 312, 316, affirmed, 1956, 2 A.D.2d 769, 154 N.Y.S.2d 428; *cf. State ex rel. Kling v. Nielsen*, 1957, 103 Ohio App. 60, 144 N.E.2d 278. Here, of course, the possibility of an R-3 classification was not alluded to at the hearing and the appellants had no opportunity to express their objections and views as to it. They were not required to anticipate the possibility of changes from the proposed amendment – changes of which not even a hint had been given. *Cf. Callanan Road Improvement Co. v. Town of Newburgh*, 1957, 6 Misc.2d 1071, 167 N.Y.S.2d 780, affirmed, 1958, 5 A.D. 2d 1003, 173 N.Y.S.2d 780.

*Castle v. McLaughlin*, 270 F.2d 448, 451-52 (D.C.Cir.1959) (footnotes omitted).

What ever may be the parameters of notice in any other context, the rule in a great majority of jurisdictions appears to be that the notice provisions relative to the enactment of and the amendment of zoning ordinances is jurisdictional. The Supreme Court of Arizona in *Hart v. Bayless Inv. & Trading Co.*, 346 P.2d 1101 (Ariz.1959) addressed this issue. The original zoning ordinance for Maricopa County had been enacted in 1949 and the issue before the Court was the validity of a January 25, 1951, amendment to the zoning ordinance and the validity of a June 2, 1952, amendment thereto. The case has certain parallels to the case at bar.

In their answer to the amended complaint the defendants, in addition to asserting the legality of the ordinances, raised certain affirmative defenses which challenged the standing of this particular plaintiff to attack the ordinances in question. The allegations were that, even if the ordinances were defective, the plaintiff was barred from contesting their validity because of laches, estoppel, waiver, and lack of equity. However, after setting out these defenses, the defendants also presented a counterclaim asking for a judical [sic] determination of the question whether the ordinances were valid and enforceable. This counterclaim for declaratory relief squarely presented the issue of the validity of the ordinances in question.

*Hart*, 346 P.2d at 1104-05.

In holding that the 1951 and 1952 amendments to the zoning ordinance were void for failure to comply with the notice provisions of the governing statute, the Supreme Court of Arizona held:

The remaining question, then, is whether the failure to comply with the notice and hearing conditions of the Zoning Act left the Commission and Board without jurisdiction to adopt either or both of the ordinances in question.

We have not previously been presented with this precise question; however, this Court has shown a predilection in analogous cases to demand strict compliance with statutory requirements concerning the zoning aspect of the police power. In *Kubby v. Hammond*, 68 Ariz. 17, 22, 198 P.2d 134, 138, we said:

> "Zoning ordinances, being in derogation of common law property rights, will be strictly construed and any ambiguity or uncertainty decided in favor of property owners."

That case dealt with the construction of an ordinance, rather than with the question of its validity. However, we feel that the principle stated therein is applicable in this case.

In *Wood v. Town of Avondale*, 72 Ariz. 217, 219, 232 P.2d 963, 964, we said:

> "Property owners are entitled to notice before the passage of a zoning ordinance which would limit the use of their property. *Berratta v. Sales*, 82 Cal.App. 324, 255 P.538; *Makrauer v. Board of Adjustment of City of Tulsa*, 200 Okla. 285, 193 P.2d 291. * * *."

The *Wood* case was quoted with approval in 3 Metzenbaum, Law of Zoning 1893, wherein it is written, at page 1889:

> "Since the enactment of zoning regulations finds its authority through the police power, and since the police power must come by way of delegation from the state * * * it is axiomatic that, in the passage of zoning ordinances, the municipalities and other political subdivision must scrupulously comply with the state statutes which delegate that power."

In other jurisdictions, courts which have been confronted with this issue have found, almost without exception, that compliance with statutory requirements as to hearing and notice is jurisdictional and that ordinances which have not been adopted in conformity with the enabling Act are void. *Hurst v. City of Burlingame*, 207 Cal. 134, 277 P. 308; *Kelly v. City of Philadelphia*, 382 Pa. 459, 115 A.2d 238; *Rhode Island Home Builders v. Budlong Rose Co.*, 77 R.I. 147, 74 A.2d 237; *Treat v. Town Plan & Zoning Commission*, 145 Conn. 136, 139 A.2d 601; *Gendron v. Borough of Naugatuck, supra.*

. . .

In the *Rhode Island Home Builders* case, *supra*, the Supreme Court held:

"* * * The provisions relating to first advertising the notice of public hearing on a proposed amendment are in form and substance mandatory conditions precedent to the proper exercise of the power thus delegated to the council. A failure to conform thereto is not to be treated as a mere irregularity in the service of a personal notice which may be waived. In our judgment such provision is not directory or intended to notify only remonstrants who may actually appear at the hearing, but contemplates other possible remonstrants and is a condition precedent to the jurisdiction or power of the council to make any valid enactment in that regard." 74 A.2d 239.

. . .

Although we recognize that laches may, under some circumstances, bar an individual complainant from asserting the invalidity of an ordinance, we cannot agree that mere passage of time will suffice to instill life into an enactment which was void at its inception. We hold that both the 1951 and the 1952 ordinances are void and of no effect.

*Hart*, 346 P.2d at 1109-10.

In holding a zoning ordinance void *ab initio* because of inadequate notice, the Supreme Court of Virginia held:

We have previously stated that, as a whole, Virginia's zoning statutes are designed to prevent zoning changes from being made "suddenly, arbitrarily, or capriciously." *Bd. of Supervisors of Fairfax County v. Snell Construction Corp.*, 214 Va. 655, 658 202 S.E.2d 889, 892 (1974).

The history of Code § 15.2-2204(A) adds further illumination. Prior to 1992, the statute did not require the notice published by the locality to contain a "descriptive summary" or a summary of any kind. In 1992, the General Assembly inserted the "descriptive summary" requirement. Acts 1992 ch. 757. This change by the General Assembly suggests that it is not enough to provide information that will merely direct readers to the physical location of the actual text of the proposed amendments. The "descriptive summary" requirement goes beyond referral to the primary document.

. . .

We hold that the notice published by the Board did not contain a sufficiently descriptive summary of the proposed amendments to the Spotsylvania County zoning ordinances. No citizen could reasonably determine, from the notice, whether he or

she was affected by the proposed amendments except in the most general sense of being located in a particular type of zoning district. Nor could a citizen determine whether the proposed amendments affected zoning issues that were of interest or concern to the citizen. Given the number of issues subsumed under the heading "development standards," using that heading as a descriptive summary fails to inform citizens of the universe of possible zoning ordinance amendments in any meaningful way. Both the evolution of the statute and the treatment of analogous statutes illustrate that such a notice is inadequate under Code § 15.2-2204(A).

We do not, in this opinion, attempt to dictate the exact language of future notices, nor do we seek to establish a bright line rule. However, considering the intent and language of the statute, the notice in this case was inadequate. Because the notice was inadequate in failing to provide a "descriptive summary," the Board acted outside the powers granted to it. *See* Code § 15.2-2204; *Potomac Greens Assoc.*, 245 Va. at 378, 429 S.E.2d at 228. Consequently, the zoning ordinances passed pursuant to the notices published on January 23, January 30, and February 6, 2002 and at issue in this case are void *ab initio*.

*Glazebrook v. Bd. of Supervisors of Spotsylvania County*, 587 S.E.2d 589, 592-93 (Va.2003).

It is not the notice question standing alone that presents a problem in this case. There is a striking parallel between the holding of the Court of Appeals of Maryland in *von Lusch v. Bd. of County Comm'rs of Queen Anne's County*, 302 A.2d 4 (Md.1973) and the holding the Supreme Court of Tennessee in *Westland West Cmty. Ass'n v. Knox County*, 948 S.W.2d 281 (Tenn.1997).

The governing Maryland zoning statute contained provisions quite similar to Tennessee Code Annotated section 13-7-105(a) and (b)(1). The Maryland statute required that proposed amendments first go to the planning commission whose recommendations were advisory but not binding on the County Commission. The Maryland statute closely parallels the procedure of Tennessee Code Annotated section13-7-105 (a) and (b)(1). The amendment in issue in *von Lusch* involved requirements relative to commercial and non-commercial airports.

In holding the amendment void because of the inadequacy of the notice of public hearing, the Court held:

The text amendment as adopted by the County Commissioners provided for separate treatment for commercial airports and private, non-commercial airports but, more importantly, provided in Section 17.141 that every existing airport, airfield, landing strip, whether commercial or non-commercial as of the date of enactment of the ordinance, "shall be deemed a conditional use as of that date," thus purporting to grant a special exception to those existing uses without reference to the Board of Appeals and provided that this ordinance would supersede all other regulations for those uses. This action of conferring a special exception status on the uses thereby

-13-

making them a permitted conforming use not subject to phasing out or other restrictions applicable to the originally proposed nonconforming use status is a most substantial change in both theory and practical application of the provisions of that ordinance to those uses. One might say that it was practically a 180 degree change of position. Such a substantial change in provisions must be the subject of another notice and hearing as we held in *Rasnake*.

*von Lusch*, 302 A.2d at 9-10.

The Court likewise held the ordinance to be void because of failure to resubmit the amendment to the Planning Commission.

As we have already pointed out, Art. 66B, § 4.04 requires the local legislative body to provide for the manner in which amendments should be made. Pursuant to this requirement, *inter alia*, the County Commissioners provided in Section 21.23 as follows:

"21.23      No change in or departure from the proposed amendment as recommended by the Planning Commission shall be made unless the same be resubmitted to said Commission for its further recommendation. The Planning Commission shall file its further recommendation within thirty (30) days, unless additional time is granted, after which the County Commissioners shall make their decision."

As we have already noted, Section 3.00 provides that the word "shall" is mandatory and not directory.

It is apparent that the provisions of Section 21.23 are mandatory and must be complied with by the County Commissioners. There is sound reason for this mandatory requirement, *i.e.,* that the County Commissioners should have the benefit of the expertise of the Planning Commission in the amendatory process. The appellees seek to overcome this requirement by suggesting that inasmuch as the *counsel* for the Planning Commission was present at the June 15 hearing and indicated that the proposed change was, in his opinion, in accord with the thinking of the Planning Commission, no useful purpose would be served by resubmission to the Planning Commission. The short answer to this contention is that the ordinance provides mandatorily for a return to the Planning Commission, itself, the deliberation of that Commission on the proposed change and a further report by that Commission to the County Commissioners. There is no provision that counsel for the Planning Commission can give that consideration and it is clear to us that he cannot commit the Planning Commission to the approval of a change with no re-referral and consideration by the Planning Commission. It is quite true that as and when the

-14-

proposed change is referred back to the Planning Commission and a further report made to the County Commissioners by that Commission, the County Commissioners are not bound by that Commission's recommendations. *See Bujno v. Montgomery County Council*, 243 Md. 110, 118, 220 A.2d 126, 130 (1966); *Miller v. Abrahams*, 239 Md. 263, 272, 211 A.2d 309, 314 (1965); and 1 Anderson, American Law of Zoning § 4.32 (1968). This does not mean, however, that the County Commissioners may, in effect, accept the opinion of counsel for the Planning Commission for what he thinks the Planning Commission will conclude and recommend and ignore the mandatory provisions of Section 21.23 of the Zoning Ordinance.

For these two reasons, we have concluded that the adoption of the text amendments by the County Commissioners on June 22, 1971, creating new Sections 17.14, 17.141 and 17.142 of the Zoning Ordinance was invalid and void.

*von Lusch*, 302 A.2d at 10.

In holding null and void a zoning amendment where the County Commission substantially deviated from the recommendations of the Planning Commission, the Tennessee Supreme Court held:

The appellee, Thomas N. Schriver, filed a rezoning application with the Knoxville-Knox County Metropolitan Planning Commission ("MPC"). His application sought to amend a tract of land's zoning from Agriculture ("A") to Shopping Center ("SC"). The MPC unanimously denied Schriver's requested change. He then appealed the MPC's decision to the County Commission.

During the hearing before the County Commission, the appellee presented a zoning proposal that differed from the proposal he originally submitted to the MPC. He requested the commission to rezone the property to Planned Commercial ("PC") as opposed to SC. The County Commission approved the revised amendment request and rezoned the property as PC.

The appellants, Westland West Community Association, *et al.*, appealed the commission's zoning decision to the Knox County Chancery Court. They alleged that the Commission's decision was void. They argued that Tenn.Code Ann. § 13-7-105(a) mandated that the appellee submit his new proposal to the MPC prior to seeking review before the County Commission. The chancery court agreed and held that when the appellee changed his request from SC to PC, he was required to by statute to resubmit the zoning request to the MPC.

The Court of Appeals reversed the chancery court's decision. They found that resubmission of the more onerous proposed amendment to MPC would have been

futile due to the MPC's previous determination that "any commercial zone would be contrary to the . . . Sector plan." Pursuant to *Wilgus v. City of Murfreesboro*, 532 S.W.2d 50 (Tenn.Ct.App.1975), the court held that resubmission is not mandated unless there is "a strong probability that the [regional planning] commission's recommendation would have been affected by the revision."

The appellants argue that the Court of Appeals erred in focusing its analysis solely on whether the board's decision would have been the same upon resubmission. They maintain that the proper inquiry should focus on the gravity of the revised proposal's changes. Provided the revisions are substantial, Tenn.Code Ann. § 13-7-105(a) mandates resubmission. We agree in part.

A county legislative body is vested the statutory power to amend zoning ordinances. Tenn.Code Ann § 13-7-105(a). A proposed zoning amendment, however, shall neither be granted nor become effective unless the proposed amendment is first submitted to the regional planning commission. *Id.* The regional commission can then either approve, disapprove, or make suggestions. *Id.* If the regional commission rejects the proposed amendment, the amendment may then be submitted to the county legislative body for approval. *Id.*

. . .

We find the statute's language clear. A proposed amendment to a zoning scheme must first be submitted to the regional planning commission. If a proposed zoning amendment is not first presented to the regional planning commission, the county commission is devoid of jurisdiction to act upon the proposal.

Once a proposed amendment has been submitted to the regional planning commission, the proposal may be revised. Whether the revised proposal must then be resubmitted to the regional planning commission is contingent upon: (1) the gravity of the revision(s), and (2) whether the board's recommendations would have been altered by the revision(s). *Wilgus v. City of Murfreesboro*, 532 S.W.2d 50, 53-54 (Tenn.Ct.App.1975). If the revision is inconsequential and would not have altered the board's recommendation, resubmission is not mandated. If, however, the revision(s) substantially alters the initial proposal, the proper inquiry is: (1) whether there is a detrimental impact on those who would oppose the proposal; and (2) whether the board's recommendations would have been altered by the revision(s). *Id.; State v. Board of Comm'rs of Knox County Tenn.*, 806 S.W.2d 181, 188 (Tenn.Ct.App.1990). An affirmative answer to either question mandates resubmission.

In the present case, we are not confronted with a mere revision to a previously proposed zoning amendment. Accordingly, we do not revert to the test for

-16-

determining whether a revision was substantial. We are confronted with an entirely new zoning classification proposal (i.e., a new zoning amendment proposal) which had never been before the regional planning commission. We find a clear distinction between a newly proposed classification and a previously submitted classification that has undergone mere revisions. Tennessee Code Annotated § 13-7-105 mandates submission of the new classification without further inquiry.

Accordingly, we hold that the proposed zoning change to planned commercial in the present case must have been presented to the regional planning commission before the county commission had jurisdiction to act on the proposal. The county commission's review and approval was, therefore, both null and void.

*Westland West Cmty. Ass'n*, 948 S.W.2d at 282-83.

The Supreme Court has held:

The power to restrain by local police regulation the property owner's right to pursue plans for buildings and repairs depends upon valid municipal ordinances, authorized by an empowering statute; for the police power belongs to the state, and passes to municipalities and local governing bodies only when and as conveyed by legislative enactment. 6 R. C. L. p. 240, § 229; 19 R. C. L. p. 800, § 108; *Farmer v. City of Nashville*, 127 Tenn. 516, 156 S.W.189, 45 L. R. A. (N. S.) 240; *City of Nashville v. Linck*, 12 Lea, 499; *Long v. Taxing District*, 7 Lea, 134, 40 Am. Rep. 55; *Raleigh v. Dougherty*, 3 Humph. 11, 39 Am. Dec. 149.

*State ex rel. Lightman v. City of Nashville*, 60 S.W.2d 161, 162 (Tenn.1933).

Once it is determined that Tennessee Code Annotated section 13-7-101 *et seq.* measures the jurisdiction of county government in the implementation of its power to zone, it necessarily follows that the failure of the Rutherford County Commission to provide notice of and hold a new public hearing after it chose to expand the acreage to be rezoned from 10 acres to 90 acres and the failure to resubmit the 90-acre proposal to the Rutherford County Planning Commission renders the November 9, 1992, purported amendment to the zoning ordinance *ultra vires* and void. *Brumley v. Town of Greeneville*, 274 S.W.2d 12 (Tenn.Ct.App.1954); *Holdredge v. City of Cleveland*, 402 S.W.2d 709 (Tenn.1966); *Family Golf of Nashville, Inc. v. Metro. Gov't of Nashville and Davidson County*, 964 S.W.2d 254 (Tenn.Ct.App.1997); *Haynes v. City of Pigeon Forge*, 883 S.W.2d 619 (Tenn.Ct.App.1994).

It cannot reasonably be said that either of the shortcomings in the zoning amendment at bar can be classified as "insubstantial" deviations from the mandates of the statutory scheme in a manner that might make applicable. *Wilgus v. City of Murfreesboro*, 532 S.W.2d 50 (Tenn.Ct.App.1975).

That the notice requirements of the statutory scheme are jurisdictional and universal is discussed at length in *State ex rel. SCA Chemical Servs., Inc. v. Sanidas*, 681 S.W.2d 557, 564-65 (Tenn.Ct.App. 1984).

That the failure to resubmit the amended zoning resolution to the Planning Commission after expanding by nine fold the territorial limits of the property originally recommended for rezoning by the Planning Commission is fatal to the jurisdiction of the Rutherford County Commission to enact the November 9, 1992, amendment is equally clear. *Holdredge*, 402 S.W.2d 709 (Tenn.1966); *Family Golf of Nashville*, Inc., 964 S.W.2d 254 (Tenn.Ct.App.1997); *Westland West Cmty. Ass'n*, 948 S.W.2d 281 (Tenn.1997).

Defendants interpose in defense various statutes of limitation including the 60-day limitations provided by Tennessee Code Annotated section 27-9-102, the 1-year statute of limitations provided by Tennessee Code Annotated section 28-3-104 and the 10-year statute of limitations provided Tennessee Code Annotated section 28-3-110. The trial court applied the 10-year statute of limitations and dismissed the case.

No statute of limitations is applicable in this case, and the passage of time is meaningless. An ordinance that is void *ab initio* is just as stillborn as is a judgment that is void *ab initio*.

The unquestioned line of authority consigning a void judgment to the status of a nullity is equally applicable to a void ordinance.

The Court of Appeals of Kentucky observed:

> There is no doubt that the judgment of May 23, 1931, is void, if, in fact, as alleged in the petition, the defendants in that action, who are the plaintiffs in the present action and the appellants here, were not served with process and had no legal notice of the pendency of the action. It is essential to the proper rendition of a judgment in personam that the court have jurisdiction of the parties, and a personal judgment without such jurisdiction is void. *Ely v. United States Coal & Coke Co.*, 243 Ky. 725, 49 S.W.2d 1021; *McDonald v. Mabee*, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608, L.R.A. 1917F, 458; Restatement of the Law of Judgments, §§ 6, 8, and 117; 1 Freeman on Judgments, §§ 226, 228, and 339. Ordinarily limitations must be pleaded and may not be raised by demurrer, but, as stated by appellees in their brief, there is an exception to the rule where the action is one for relief from fraud brought more than five years after the fraud was perpetrated. In such an action the plaintiff must allege facts to excuse the delay. *Cox v. Simmerman*, 243 Ky. 474, 48 S.W.2d 1078. KRS 413.130 provides that relief for mistake or fraud must be commenced within five years after discovery of the fraud or mistake but not longer than ten years after the commission of the act. This statute has no application to a judgment that is void because the defendant was not before the court. He must have been a party to the suit with an opportunity to know of the fraud or mistake or to discover it after it

was committed. A void judgment is no judgment at all, and no rights are acquired by virtue of its entry of record. A court may, in a proper proceeding, vacate it at any time. The lapse of time is no bar to such relief. *Brown's Adm'r v. Gabhart*, 232 Ky. 336, 23 S.W.2d 551; *Johnson v. Carroll*, 190 Ky. 689, 228 S.W.412; *Gardner v. Lincoln Bank & Trust Co.*, 251 Ky. 109, 64 S.W.2d 497.

*Hill v. Walker*, 180 S.W.2d 93, 95 (Ky.Ct.App.1944).

Void judgments are the subject of Federal Rule of Civil Procedure 60(b)(4) and its counterpart, Tennessee Rule of Civil Procedure 60.02(3). Because the federal rule and the Tennessee rule are essentially identical, decisions under federal rule 60 may be considered in construing Tennessee rule 60. *March v. Levine*, 115 S.W.3d 892, 908 (Tenn.Ct.App.2003).

An attack on a void judgment was sustained under Federal Rule of Civil Procedure 60(b)(4) after a lapse of 30 years in *Crosby v. Bradstreet Co.*, 312 F.2d 483 (2nd Cir.1963) with the court holding, "The order was void, and under Rule 60(b)(4) of the Federal Rules of Civil Procedure, the parties must be granted relief therefrom." *Crosby*, at 485.

The Court of Appeals of Oregon in construing the Oregon counterpart to Federal Rule of Civil Procedure 60(b)(4) discussed at length the rationale behind the rule.

> Plaintiff argues that Mills's motion to set aside the judgment was not timely. We set aside the judgment because there is no timeliness requirement for moving to set aside a void judgment. ORCP 71 B(1) provides, in pertinent part:
>> "On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: * * * (d) the judgment is void; * * *. The motion shall be made within a reasonable time, and for reasons (a), (b), and (c) not more than one year after receipt of notice by the moving party of the judgment."
> Although the rule would seem both to require Mills to have filed this motion within a reasonable time after learning of the judgment and to grant the trial court discretion in acting on the motion, neither of those requirements can apply to a motion to set aside a void judgment.
>
> In *Burt & Gordon v. Stein*, 128 Or.App. 350, 876 P.2d 338, *rev. den.*, 320 Or. 270, 882 P.2d 603 (1994), we held that it was an abuse of discretion for a trial court to refuse to set aside a void judgment. In doing so, we quoted *Black's Law Dictionary* 1412 (5th ed. 1979), which defined a void judgment as
>> " '[o]ne which has no legal force or effect, [the] invalidity of which may be asserted by any person whose rights are affected at any time and at any place or collaterally. One which, from its inception is and forever continues to be absolutely null, without legal efficacy,

> ineffectual to bind parties or support a right, of no legal force and effect whatever, and incapable of confirmation, ratification, or enforcement in any manner or to any degree. One that has merely semblance without some essential elements, as want of jurisdiction or failure to serve process or have party in court.' (Citation omitted.)"

128 Or.App. at 354-55, 876 P.2d 338. Because a void judgment, as the definition indicates, is a nullity *ab initio*, all that a trial court does when it sets it aside is to give effect to its prior determination of its nullity. It does not exercise any discretion, and there cannot be any time limitations on its action.

As both the Supreme Court and this court have recognized, the source of ORCP 71 is FRCP 60. Both courts have also relied on federal cases in construing other portions of the rule. *See McCathern v. Toyota Motor Corp.*, 332 Or. 59, 23 P.3d 320 (2001); *Johnson v. Johnson*, 302 Or. 382, 391-92, 730 P.2d 1221 (1986); *Jansen v. Atiyeh*, 96 Or.App. 54, 59-60, 771 P.2d 298 (1989). A leading treatise describes the law under FRCP 60(b)(4), which is essentially identical to ORCP 71 B(1)(d):

> "Rule 60(b)(4) authorizes relief from void judgments. Necessarily a motion under this part of the rule differs markedly from motions under the other clauses of Rule 60(b). There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4), nor is there any requirement, as there usually is when default judgments are attacked under Rule 60(b), that the moving party show that he has a meritorious defense. Either a judgment is void or it is valid. Determining which it is may well present a difficult question, but when that question is resolved, the court must act accordingly.
>
> "By the same token, there is no time limit on an attack on a judgment as void. The one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a 'reasonable time,' which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion. A void judgment cannot acquire validity because of laches on the part of the judgment debtor."

Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 11 *Federal Practice and Procedure* § 2862 (2d ed. 1995) (footnotes omitted).

Those federal law principles are consistent both with the nature of a void judgment and with our previous cases under ORCP 71 B(1)(d). We believe that they accurately state Oregon law on the subject. In short, the reasonable time to move to

set aside a void judgment is forever, and it is an abuse of discretion for a trial court to fail to do so. The trial court erred by not setting aside the judgment.

*Estate of Hutchins v. Fargo*, 72 P.3d 638, 642-43 (Or.Ct.App.2003).

The Supreme Court of North Dakota, in construing its counterpart of Federal Rule of Civil Procedure 60(b)(4), held:

Valid service of process is necessary to acquire personal jurisdiction over a defendant, and a judgment entered without personal or subject matter jurisdiction is void. *McComb v. Aboelessad*, 535 N.W.2d 744, 747 (N.D.1995). Rule 60(b)(iv), N.D.R.Civ.P., allows relief from a void judgment. Although the decision to vacate a judgment under Rule 60(b) is ordinarily left to the discretion of the trial court, the court has no discretion under subdivision (b)(iv) if the judgment is void. *Johnson, Johnson, Stokes, Sandberg & Kragness, Ltd. v. Birnbaum*, 555 N.W.2d 583, 585 (N.D.1996); *First Western Bank & Trust v. Wickman*, 527 N.W.2d 278, 279 (N.D.1995). If the judgment is valid, the motion to vacate must be denied; if the judgment is void, the court has no discretion to protect it and it must be vacated. *Johnson*, 555 N.W.2d at 585; *First Western*, 527 N.W.2d at 279. The question to be resolved is whether the judgment is void as a matter of law, and our review of the trial court's decision is plenary. *First Western*, 527 N.W.2d at 279.

Eggl asserts Fleetguard's motion to vacate was untimely, coming more than seven years after judgment was entered. A motion to vacate a judgment under N.D.R.Civ.P. 60(b) "must be made within a reasonable time." Cases construing the corresponding federal rule, however, clarify that there is no time limit for attacking a void judgment under Rule 60(b)(iv). *See, e.g., New York Life Ins. Co. v. Brown*, 84 F.3d 137, 142 (5th Cir.1996); *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.2d 21, 23 (1st Cir.1992); *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir.), *cert. denied*, 484 U.S. 976, 108 S.Ct. 486, 487, 98 L.Ed.2d 485 (1987); *see also* 12 James Wm. Moore et al., *Moore's Federal Practice* §§ 60.44[5][c], 60.65[1] (1998); 11 Charles Alan Wright et al., *Federal Practice and Procedure* §§ 2862, 2866 (1995). "[T]here is and can be no time limit on judicial relief from a judgment that is, in fact, already a nullity and always subject to direct and collateral attack," and therefore "[a]nytime is a 'reasonable' time to set aside a void judgment." 12 Moore, *supra*, § 60.65[1], at 60-197. Fleetguard's motion was not untimely.

*Eggl v. Fleetguard, Inc.*, 583 N.W.2d 812, 814 (N.D.1998).

In discussing the void judgment rule, the United States Fifth Circuit Court of Appeals observed:

Motions brought pursuant to Rule 60(b)(4), however, constitute such exceptional circumstances as to relieve litigants from the normal standards of timeliness associated with the rule. While Rule 60(b)(1) motions must be brought within one year, we have held that motions brought pursuant to subsection (4) of the rule have no set time limit. This court has explained that "'[t]here is no time limit on an attack on a judgment as void. The one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a "reasonable time," which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion.'" *New York Life Insurance Company v. Brown*, 84 F.3d 137, 142-43 (5th Cir.1996) (quoting *Briley v. Hidalgo*, 981 F.2d 246, 249 (5th Cir.1993)). Other courts have noted simply that "[u]nlike its counterparts, Rule 60(b)(4), which provides relief from void judgments, 'is not subject to any time limitation.'" *Orner v. Shalala*, 30 F.3d 1307, 1310 (10th Cir.1994) (quoting *V.T.A., Inc.*, 597 F.2d at 224 n. 9 and accompanying text). While failing to prescribe concrete time limitations, the courts have established that the normal temporal considerations do not apply in the Rule 60(b)(4) context.

*Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir.1998).

The Fifth Circuit Court has likewise observed:

Rule 60(b)(4) allows district courts to "relieve a party . . . from a final judgment" because the judgment is void. We typically review district court orders denying Rule 60(b) relief for abuse of discretion. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 63 (5th Cir.1992). "When, however, the motion is based on a void judgment under rule 60(b)(4), the district court has no discretion – the judgment is either void or it is not." *Recreational Prop. Inc. v. Southwest Mortgage Serv. Corp.*, 804 F.2d 311, 313 (5th Cir.1986); 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2862 (2d ed. 1995). "[T]here is no time limit on an attack on a judgment as void. The one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a 'reasonable time,' which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion." *Briley v. Hidalgo*, 981 F.2d 246, 249 (5th Cir.1993) (quoting 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2862 (1973)) (brackets in original).

*New York Life Ins. Co. v. Brown*, 84 F.3d 137, 142-43 (5th Cir.1996).

While cases involving time limitations relative to attacks on void municipal ordinances are sparse, it is clear that void still means void and lapse of time cannot validate an ordinance void *ab initio*. *State ex rel. Welks v. Town of Tumwater*, 400 P.2d 789 (Wash.1965) involved an attack on a zoning ordinance enacted 17 years earlier and two later ordinances purporting to amend the first

ordinance. In holding all three zoning ordinances to be void, the Supreme Court of Washington held:

> The defects in ordinance No. 246 were not remedied by the enactment of ordinance No. 437. Ordinance No. 437 did not purport to re-enact No. 246. The rule is:
>
>> "The general rule is that void ordinances cannot be amended and that an ordinance passed as an amendment to a previous ordinance, which never took effect, is invalid; *a void ordinance cannot be vitalized by amendment, and re-enactment is necessary to validate that intended to be enacted by it.* Hence, where an ordinance is passed by one branch of the legislative body at one session, and is not passed by the other until the next session, it is void, and a later amendment cannot give it any validity. *Without question, where an ordinance is void, a subsequent ordinance, that cannot be enforced of itself, and that purports to amend a single section of the prior ordinance, is invalid. * * *."* (Italics ours.) 6 McQuillin, Municipal Corporations (3rd ed.) § 21.05, p. 183.
>
> The fact that the ordinances of the town of Tumwater, including the ordinances here in question, had, prior to the commencement of the present action, been included in the codification of the ordinances of the town of Tumwater, as provided for by Laws of 1957, chapter 97, does not result in the re-enactment of the ordinances. Such a statute does not contemplate the re-enactment or the republication of the ordinances, but merely their compilation for convenient use and to simplify the method of their proof. Defects in the ordinances or in their enactment are not thereby cured. *Barrett v. Chicago, M. & St. P.R. Co.*, 190 Iowa 509, 175 N.W. 950, 180 N.W. 670.

*State ex rel. Welks v. Town of Tumwater*, at 792.

Further buttressing the view that lapse of time alone cannot validate a void ordinance is *Bd. of Zoning Appeals of Monroe County v. Berndt*, 502 N.E.2d 1349 (Ind.Ct.App.1987). In that case, Monroe County allegedly enacted its zoning ordinance on June 3, 1974. More than 10 years later on July 23, 1984, the Zoning Board initiated an action against Sandra S. Berndt alleging violation of the zoning ordinance. Defendants answered that the 1974 ordinance was invalid because notice of the public hearing had been published on May 17, 1974, which was 12 days prior to the public hearing scheduled for May 29, 1974. The controlling statute provided, "The notice shall be published at least twice within ten (10) days before the time set for the hearings." *Bd. of Zoning Appeals of Monroe County*, 502 N.E.2d at 1352. The Zoning Board argued that since one of the two notices had been published within 10 days prior to the May 29 hearing that its mistake in publishing the first notice 12 days prior to the hearing instead of within 10 days constituted "substantial compliance" with the controlling statute. Not so said the Indiana Court of Appeals holding that the

1974 zoning ordinance was null and void *ab initio* and further holding that the re-codification adopted by Monroe County on May 23, 1983, did not validate the 1974 zoning ordinance. Said the Court:

> If an ordinance is revised upon codification, the county commissioners first must satisfy all of the original conditions precedent such as public hearings and legal notice. An ordinance which is being revised cannot be summarily codified without following the normal steps for an ordinance's original enactment or amendment.
>
> Since section 6 does not apply to revisions, it is obvious that it does not apply to invalidly enacted ordinances. Prior to codifying such an ordinance, we hold that the county commissioners must first satisfy the conditions precedent such as public hearings and notice to validly enact the ordinance. "The validating ordinance must be passed in the manner essential to the valid enactment of the original." 62 C.J.S. Municipal Corporations, § 432(b) (1949). Only validly enacted ordinances may be codified under the conditions of section 6. "A codification may not have the effect of curing defects in ordinances or in their enactment." 5 E. McQuillin, *Municipal Corporations* § 16.86 (3d ed. 1981); *see also* 62 C.J.S. *Municipal Corporations* § 432(b) (1949) ("Defects in ordinances are not cured by the inclusion of the ordinances in a compilation for convenient use and to simplify the method of their proof."); *cf. City of Chester v. Elam* (1962), 408 Pa. 350, 184 A.2d 257; *State ex rel. Weiks v. Town of Tumwater* (1965), 66 Wash.2d 33, 400 P.2d 789. Put simply, codification cannot breath[e] life into that which is dead.

*Bd. of Zoning Appeals of Monroe County*, 502 N.E.2d at 1353-54.

It is well at this point to discuss *Hutcherson v. Criner*, 11 S.W.3d 126 (Tenn.Ct.App.1999). In that case, the complaint was filed on December 7, 1995, to enforce provisions of a 1984 zoning resolution together with 1991 and 1992 amendments thereto. Defendant challenged the sufficiency of the notice for a public hearing prior to the 1984 zoning ordinance. In a non-jury trial, the trial judge held that the county had complied with the notice provisions prior to the public hearing. On appeal, the Court of Appeals held:

> With regard to the 1984 Zoning Resolution, we agree with the trial court's finding that the 1984 Resolution is not invalid due to failure to comply with the statutory requirements. The evidence does not preponderate against the trial court's findings in this regard. Moreover, "after long public acquiescence in the substance of an ordinance, public policy does not permit such an attack on the validity of the ordinance because of procedural irregularities." *Trainor v. City of Wheat Ridge*, 697 P.2d 37, 39 (Colo.App.1984)(citing *Edel v. Filer Township*, 49 Mich.App. 210, 211 N.W.2d 547 (1973); *Taylor v. Schlemmer*, 353 Mo. 687, 183 S.W.2d 913 (1944); *Struyk v. Samuel Braen's Sons*, 17 N.J.Super. 1, 85 A.2d 279 (1951)); *see also* 83 Am.Jur.2d *Zoning and Planning* § 581 (1992). In *Trainor*, the zoning ordinance

under attack had been in effect for over ten years before the plaintiffs filed their complaint. Thus, the court held that given the extensive public reliance on the ordinance, such was immunized from a belated attack on various procedural grounds. The same holds true for the 1984 Zoning Resolution that is under attack on procedural grounds by Mr. Hutcherson. The 1984 Zoning Resolution has been in effect for over ten years and has been relied on extensively by the residents of Lauderdale County including Mr. Hutcherson. As such, the 1984 Zoning Resolution is immunized from an attack on procedural grounds.

*Hutcherson*, 11 S.W.3d at 134-35.

*Hutcherson* was decided after a non-jury trial on the merits in which compliance with the notice provisions prior to the 1984 public hearing was a disputed question of fact. The Court of Appeals affirmed the trial court on the basis that the evidence did not preponderate against the trial court's findings in this regard. As to the question of any long public acquiescence, we note that the case at bar is before the Court on Defendants' Tennessee Rule of Civil Procedure 12.02(6) Motions to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted. The allegations of the Complaint must be accepted as true. It is alleged therein:

> 16. **EXPANSION OF THE SHOOTING RANGE**: Despite the Commission's inconsistency and lack of oversight, Mr. Jackson proceeded to operate a skeet range only on the 10 acres of property for which he originally requested the zoning reclassification. Sometime in 1999, however, Mr. Jackson allowed Defendant Alan Loveless d/b/a/ Big Springs Clay Target Sports to begin operation on the property. Mr. Loveless capitalized on the Commission's neglect by expanding the shooting range to approximately six times the size of the original shooting range, or approximately 60 acres of Mr. Jackson's tract.

Since no issue is made by any party as to Mr. Jackson's use of the original 10-acre tract for his skeet range and there is no dispute to the alleged fact that the expansion beyond the limits of 10 acres did not begin until 1999, there can be no longstanding acquiescence by the public, and thus no public policy considerations are involved that could adversely affect Plaintiffs' right to raise the issue of the void character of the November 9, 1992, zoning resolution.

Whether the November 9, 1992, zoning resolution could be effective as to the original 10 acres is not an issue that is before the Court in this case.

It is clear then that the purported zoning resolution of November 9, 1992, is void *ab initio* because of the failure of the resolution to substantially comport to the recommendations of the Planning Commission and for failure of the County Commission to resubmit the proposed resolution to the Planning Commission when it decided to dramatically depart from the recommendations of the Planning Commission.

This case having been resolved on non-constitutional grounds, we decline to address the constitutional issues. *Haynes*, 883 S.W.2d 619 (Tenn.Ct.App.1994); *Watts v. Memphis Transit Mgmt. Co.*, 462 S.W.2d 495, 498 (Tenn.1971).

Since the case is before this Court on appeal of dismissal under Tennessee Rule of Civil Procedure 12.02(6) for failure to state a claim upon which relief can be granted, the judgment of the trial court will be reversed and the case remanded for further proceedings not inconsistent with this opinion. While it would appear from the record made in this case that the void character of the November 9, 1992, Zoning Resolution cannot be successfully challenged under any facts that can be developed upon remand, such a determination at this time by this Court would be improper. We reverse the action of the trial court in granting the Tennessee Rule of Civil Procedure 12.02(6) Motions and remand the case for such further proceedings as may be necessary.

Costs of the cause are assessed to the appellees.

_____
WILLIAM B. CAIN, JUDGE